**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5145

OMAR WOODBINE, a/k/a Omar
Woodvear,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Chief District Judge.
(CR-94-350-A)

Argued: November 2, 1995

Decided: March 11, 1996

Before RUSSELL and WIDENER, Circuit Judges, and MICHAEL,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Claude David Convisser, Alexandria, Virginia, for Appel-
lant. John Patrick Elwood, Special Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Vir-
ginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attor-
ney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Omar Woodbine appeals his conviction by jury of illegally re-entering the United States after having been arrested and deported, in violation of 8 U.S.C. § 1326(a) and (b)(1). [1] The district court sentenced Woodbine to twenty-four months imprisonment. Woodbine contends that the evidence adduced at trial was insufficient as a matter of law to support his conviction. He also challenges several evidentiary rulings made by the district court. Finding no error, we affirm.

_____

[1] 8 U.S.C. § 1326 provides as follows:

> (a) Subject to subsection (b) of this section, any alien who --
>
> (1) has been arrested and deported or excluded and deported, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such aliens reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
>
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.
>
> (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection --
>
> (1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both.

2

I.

Woodbine initially came to the United States in 1979 on business. However, he stayed beyond the six months permitted by his visa. In 1983, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause charging Woodbine with being deportable for having remained in the country after the expiration of his visa. The INS simultaneously issued a warrant for Woodbine's arrest and Woodbine was subsequently arrested. Woodbine was released on bond and appears to have evaded the INS until 1986 when he was finally brought before an Immigration Judge. On February 3, 1986, Woodbine was ordered deported and served with a letter (INS Form I-294) informing him that re-entry into the United States without permission was punishable as a felony. On February 5, 1986, a Warrant of Deportation (INS Form I-205) was issued, and the following day, Woodbine was deported to Panama. In July of 1992, Woodbine was located in the District of Columbia prison system, triggering this action.

II.

Woodbine argues on appeal that there was insufficient evidence to support his conviction. Specifically, Woodbine maintains that the government failed to prove, as a matter of law, two essential elements of the charged offense. First, Woodbine contends that the government failed to prove that Woodbine had been arrested or excluded at the time he was deported. Second, Woodbine argues that the government failed to prove identity -- that the person who was deported in 1986 was the same person who was subsequently found in the United States in 1992. Woodbine also argues that the trial judge committed reversible error by denying Woodbine's motion to strike expert fingerprint testimony, and by admitting certain evidence over the objections of defense counsel.

We discuss in detail only Woodbine's claim that the evidence of arrest was insufficient as a matter of law to support his conviction.[2] Evidence is sufficient to support a conviction so long as, "viewing the

_____

[2] We note that this was the only issue raised by defense counsel at oral argument.

evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

III.

Woodbine argues that the government failed to prove that he was arrested prior to his deportation in 1986 -- an essential element of the crime charged. Rather, it is possible, Woodbine contends, that he voluntarily submitted himself to physical deportation without having been arrested. Woodbine concedes there was evidence before the jury that he was taken into custody in 1983, pursuant to the arrest warrant and Order to Show Cause issued by the INS.**3** However, Woodbine argues that this arrest is not equivalent to the "arrest" contemplated by § 1326. Instead, Woodbine asserts that an "arrest" under § 1326 signifies an arrest occurring <u>after</u> a show cause hearing, not one undertaken for the purpose of securing the presence of a potential deportee at a show cause hearing.

Woodbine relies for support on <u>United States v. Wong Kim Bo</u>, 466 F.2d 1298 (5th Cir.), <u>reh'g denied</u>, 472 F.2d 720 (1972). In that case, the Fifth Circuit held that evidence of an arrest carried out pursuant to an Order to Show Cause was insufficient to meet the arrest require-

_____

**3** On June 14, 1995, the government, in an effort to buttress its arguments on appeal with respect to the "arrest" prong, filed a motion for leave to file a supplemental appendix. That motion was granted and the government subsequently filed two trial exhibits as part of its supplemental appendix. The first, Government Exhibit 5-A, is a 1983 notice written on INS letterhead, commanding one Valerie Woodbine to surrender the defendant for a hearing "pursuant to the terms of the bond posted by you for the release from custody of the above-named alien." The second, Government Exhibit 5-C, is a 1986 notice written on INS letterhead, releasing Woodbine from custody pending his deportation. On October 31, 1995, Woodbine filed a motion to vacate the order granting the government leave to file the supplemental appendix on the grounds that the government did not move into evidence the two exhibits comprising the appendix. The government does not oppose Woodbine's motion to vacate and we, therefore, grant the motion. Accordingly, we do not rely in any way upon the exhibits contained in the supplemental appendix.

4

ment of § 1326. In reaching its decision, the Fifth Circuit reasoned that the purpose of the arrest element of § 1326 is to afford aliens "all notice reasonably possible relating to their status." Id. at 1304. In other words, the court opined that unless an alien is arrested, he or she will not have adequate notice that re-entering the country after being deported is illegal. Moreover, it was the court's judgment that an arrest for purposes of securing a potential deportee's presence at a show cause hearing did not afford the potential deportee adequate notice of his or her status and, thus, was not an "arrest" for purposes of § 1326.

Although we have reservations about the correctness of the court's holding in Wong Kim Bo,**4** we conclude that the case ultimately undermines, rather than supports, Woodbine's appeal. Simply stated, Wong Kim Bo is distinguishable from the present case because a Warrant of Deportation and INS Form I-294 were never issued in that case. Id. at 1301. The Fifth Circuit itself noted the importance of this distinction: "If a Warrant of Deportation (INS Form I-205) and the accompanying INS form I-294 had been issued, there could be no doubt that the defendant had been fully informed as to the legal effect of his departure and the consequences of his reentry." Id. at 1305. Thus, "service of the Warrant of Deportation [ ] must be characterized as an `arrest'" for purposes of § 1326. Id. at 1305 n. 17; see also United States v. Hernandez, 693 F.2d 996, 998 (10th Cir. 1982), cert. denied, 459 U.S. 1222 (1983) (issuance of Warrant of Deportation constitutes an "arrest" for purposes of § 1326).

_____

**4** It appears to us that a pre-hearing arrest and Order to Show Cause gives a potential deportee ample notice that he cannot get on the next plane back to the U.S. if and when he is adjudged deportable and is actually deported. Indeed, common sense dictates such a conclusion. Otherwise, there would be no reason for the government to set in motion its cumbersome deportation machinery. Furthermore, as the Fifth Circuit appeared to concede in its subsequent opinion denying a rehearing in the Wong Kim Bo case, 472 F.2d 720, 722 (5th Cir. 1972), the government is not required under § 1326 to show specific intent on the part of the alien. Thus, we fail to see the importance of notice in the first instance.

It is undisputed that Woodbine was served both with a Warrant of Deportation and with INS Form I-294 and that these documents were admitted into evidence.**5** Thus, there was sufficient evidence for the jury to conclude that Woodbine had been "arrested" prior to being deported.

IV.

We have considered Woodbine's other objections and find them without merit. The government proved the identity element of the offense through fingerprint and handwriting specialists. Although Woodbine contends that the expert testimony was not persuasive, the jury could accept or reject it. In addition, the district court did not abuse its discretion in making its evidentiary rulings. Accordingly, we affirm Woodbine's conviction.

<u>AFFIRMED</u>

_____

**5** Woodbine argues that he was not served with these documents until he was brought to the airport to be deported. Apparently, Woodbine believes that the issuance of the documents at the airport vitiated their ability to consummate an arrest because Woodbine was about to get on an airplane. We are puzzled by this argument since Woodbine contends that the <u>sine qua non</u> of an "arrest" for purposes of § 1326 is the provision of notice of the inability to re-enter the country. Given that Woodbine concedes he received the Warrant of Deportation and INS form I-294 at the airport, the timing of the issuance of those documents would appear to have little import for determining whether an "arrest" was effectuated.